**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| SHEILA DENISE KENDRICKS,<br><br>PLAINTIFF,<br><br>v.<br><br>UNITED STATES OF AMERICA, STATE OF TEXAS, METHODIST CHILDREN'S HOME, ALAN D ALBRIGHT, JEFFREY C. MANSKE, LEIGH A. DIAZ, CATHARINA HAYNES, CORY WILSON, LESLIE SOUTHWICK, GREG COSTA, JAMES GRAVES, PRISCILLA OWEN, LYLE CAYCE, THOMAS PLUNKETT, LANEY LAMPARD, ROSHAWN JOHNSON, MARGARET DUFOUR, DANNY WASH, JOHN HAWKINS, JOHN PALMER, ROY BARRETT, BARBARA WOJAK, CARRIE MILLS, JOSE CECENO, MARCIA ANATIVARTE-JORDAN, JAMES FOWLER, JUDY BROADWAY, MARK DOZIER, ERICA REYES-ROSAS, FRANCIS COLMAN, BARBARA BAUERNFEIND, DAN MOORE, LE'ANN SOLMONSON, CLIFTON HOWARD, BILL BINGHAM, MEREDITH CHACON, LES LESKOVEN, MARK WARD ELENA DESOTO, AARON DEMERSON, MARIBEL CHARNICHART, TREY OAKLEY AUSTIN HENRY BROWN, SARAH MUSICK, JEFFREY CLARK, DENNIS GILL, STEVE WILSON, AMY BARLEY, TOMMY DODSON, MARIE MITCHELL, LORI WILHITE, W. EARL BLEDSOE, CAROLINE SINKFIED, PRICILLA PATTERSON, JOHN FARRELL, JOHN DOES JANE DOES, PAULA COOPER, AND LES LESKOVEN<br><br>DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 6:23-CV-00701<br><br>VIOLATION AND DEPRIVATION OF CONSTITUTIONAL RIGHTS; NEGLIGENCE; FRAUD; AND AIDING AND ABETTING FRAUD<br><br>FILED<br>OCT 10 2023<br>CLERK, U.S. DISTRICT COURT<br>WESTERN DISTRICT OF TEXAS<br>BY ______ DEPUTY CLERK |

**PLAINTIFF' S ORIGINAL COMPLAINT**

Plaintiff Sheila Denise Kendricks ("Kendricks"), proceeding pro se, brings this action pursuant to Title 28 U.S.C. § 1331; Title 42 U.S.C. § 1983; Bivens v. Six Unknown Narcotics Agents 403

U.S. 388 (1971) for Deprivation and Violation of Rights Under the United States Constitution, Negligence, Fraud, and Aiding and Abetting Fraud for Declaratory and Injunctive Relief, Void Orders and Judgments to be vacated, an award of more than thirty million dollars, and all other relief Kendricks is legally entitled to based on pleadings in this Complaint. Kendricks shows the following:

**PARTIES**

1. Parties to this Complaint include an individual who is the Plaintiff; the United States of America, via official acts by its employees; the state of Texas, via official acts by its employees; a non-profit, religious, and charitable organization, its Board of Directors, Attorneys, President, and employees. All federal and state employees, who are named in this Complaint, are sued in both their individual (personal) and official capacities.

A. Plaintiff:

Sheila Denise Kendricks
25120 Panther Bend Court Apt. #330
Spring, Texas 77380

B. Defendants (Entities):

United States of America
Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530

State of Texas
Attorney General's Office
300 West 15th Street
Austin, Texas 78701

Methodist Children's Home
Religious Organization
1111 Herring Avenue
Waco, TX 76708

C. Defendants (Federal Employees):

Priscilla Owen
600 S. Maestri Place, #115
New Orleans, LA 70130

Catharina Haynes
600 S. Maestri Place, #115
New Orleans, LA 70130

Greg Costa
600 S. Maestri Place, #115
New Orleans, LA 70130

Cory Wilson
600 S. Maestri Place, #115
New Orleans, LA 70130

Andrew Oldham
600 S. Maestri Place, #115
New Orleans, LA 70130

Leslie Southwick
600 S. Maestri Place, #115
New Orleans, LA 70130

James Graves

Alan Albright

Jeffrey Manske

600 S. Maestri Place, #115
New Orleans, LA 70130

Laney Lampard
600 S. Maestri Place, #115
New Orleans, LA 70130

Margaret Dufour
600 S. Maestri Place, #115
New Orleans, LA 70130

800 Franklin Avenue
Waco, Texas 76701

Roeshawn Johnson
600 S. Maestri Place, #115
New Orleans, LA 70130

Thomas Plunkett
600 S. Maestri Place, #115
New Orleans, LA 70130

800 Franklin Avenue
Waco, Texas 76701

Leigh A. Diaz
800 Franklin Avenue
Waco, Texas 76701

D. Defendants (Texas State Employees):

Aaron Demerson
101 East 15th Street
Austin, Texas 78778

James Fowler
1215 Guadalupe Street
Austin, Texas 78778

Marcia Anativarte-Jordan
1215 Guadalupe Street
Austin, Texas 78778

Jose Ceceno
1215 Guadalupe Street
Austin, Texas 78778

Carrie Mills
1215 Guadalupe Street
Austin, Texas 78778

Elena Soto
501 Hawkins Boulevard
El Paso, Texas 79915

E. Defendants (Attorneys and Paralegals):

Danny Wash
6613 Sanger Avenue
Waco, Texas 76710

John Hawkins
400 Austin Avenue #800
Waco, Texas 76701

Barbara Wojak
6613 Sanger Avenue
Waco, Texas 76710

John Palmer
400 Austin Avenue #800
Waco, Texas 76701

Roy Barrett
400 Austin Avenue #800
Waco, Texas 76701

Paula Cooper
400 Austin Avenue #800
Waco, Texas 76701

F. Defendants (Methodist Children's Home Board of Directors, who served from May of 2018 until current, and Methodist Children's Home Employees):

Judith Broadway
1111 Herring Avenue
Waco, Texas 76708

Julie Spiech
1111 Herring Avenue
Waco, Texas 76708

Sarah Musick

Mark Dozier
1111 Herring Avenue
Waco, Texas 76708

Trey Oakley
1111 Herring Avenue
Waco, Texas 76708

Francis Coleman

Erica Reyes-Rosas
1111 Herring Avenue
Waco, Texas 76708

Austin Henry Brown
1111 Herring Avenue
Waco, Texas 76708

Barbara Bauernfeind

1111 Herring Avenue
Waco, Texas 76708

Jeffrey Clark
1111 Herring Avenue
Waco, Texas 76708

Les Leskoven
1111 Herring Avenue
Waco, Texas 76708

Amy Barley
1111 Herring Avenue
Waco, Texas 76708

Marie Mitchell
1111 Herring Avenue
Waco, Texas 76708

Lori Wilhite
1111 Herring Avenue
Waco, Texas 76708

Priscilla Patterson
1111 Herring Avenue
Waco, Texas 76708

Le'Ann Solomanson
1111 Herring Avenue
Waco, Texas 76708

1111 Herring Avenue
Waco, Texas 76708

Clifton Howard
1111 Herring Avenue
Waco, Texas 76708

Bill Bingham
1111 Herring Avenue
Waco, Texas 76708

Tommy Dodson
1111 Herring Avenue
Waco, Texas 76708

Daniel Moore
1111 Herring Avenue
Waco, Texas 76708

Meredith Chacon
1111 Herring Avenue
Waco, Texas 76708

Caroline Sinkfield
1111 Herring Avenue
Waco, Texas 76708

W. Earl Bledsoe
1111 Herring Avenue
Waco, Texas 76708

1111 Herring Avenue
Waco, Texas 76708

Amy Barley
1111 Herring Avenue
Waco, Texas 76708

Dennis Gill
1111 Herring Avenue
Waco, Texas 76708

Steve Wilson
1111 Herring Avenue
Waco, Texas 76708

John Farrell
1111 Herring Avenue
Waco, Texas 76708

Mark Ward
1111 Herring Avenue
Waco, Texas 76708

Tom Wilkerson
1111 Herring Avenue
Waco, Texas 76708

G. Defendants (whose names and/or addresses are currently unknown to Plaintiff):

Jane Doe
State Employee
Unknown Address
Killeen, Texas

John Does
MCH Board of Directors
1111 Herring Avenue
Waco, Texas 76708

Jane Does
MCH Board of Directors
1111 Herring Avenue
Waco, Texas 76708

## JURISDICTION AND VENUE

3. This court has jurisdiction over the matters in this Complaint and is the proper venue because parties to this action reside in and/or conduct business in McLennan County; are

government and non-government agencies; are state, federal, and non-government employees who acted in their official and/or individual capacities; and the amount in controversy is over $30 million. However, Kendricks requests a change in Venue that is necessary for the interest of justice, and for Kendricks to receive a fair and just trial, and/or an appearance of a fair and just trial. Kendricks' request for a change in Venue does not prejudice any Defendant in this Complaint, and is made pursuant to 28 U.S Code § 1406, and any and all other legal standards applicable and relevant. Specifically, Kendricks requests that absolutely no decision is made regarding this Complaint in this court, and for this case to be immediately transferred to the United States District Court for the Western District of California that is located on 255 East Temple Street in Los Angeles, California. Kendricks' request is based on the following:

Priscilla Owen, who is named as a defendant in this Complaint, is the Chief Justice of the United States Court of Appeals for the Fifth Circuit Court and has authority and/or influence over District Judges and Appellate Judges in this Venue. Circuit Judges for the United States Court of Appeals are named in this Complaint. This Chief Justice also has influence over United States District Court Judge and the United States Magistrate Judge named in this Complaint and in this Venue. This Complaint alleges that Justices, a District Judge, a Magistrate Judge, Clerks, and other federal employees acted separately and/or in cohorts and engaged in illegal and/or harmful acts against Kendricks.

## STATEMENT OF FACTS

### Facts Regarding Danny Wash, Barbara Wojak, Marcia Anativarte-Jordan, Carrie Mills, Jose Ceceno, James Fowler, and John Hawkins

4. In August of 2018, Kendricks signed a contract with Danny Wash ("Wash"), an attorney, for legal representation in her dispute with her former employer Methodist Children's Home ("MCH"). Wash, Barbara Wojak ("Wojak"), a paralegal who works under Wash's supervision,

and Kendricks prepared her Complaint to be submitted to Texas Workforce Civil Rights Division ("TWCCRD").

5. In October of 2018, Wojak contacted Kendricks and made arrangements for Kendricks to meet with her regarding Kendricks' TWCCRD Charge of Discrimination. Wojak provided Kendricks a TWCCRD Charge of Discrimination that Kendricks reviewed, signed, and dated, and Wojak informed Kendricks that she would notarize the document before submitting it to the TWCCRD.

6. In January of 2019, Wojak informed Kendricks that mediation had been scheduled with a TWCCRD mediator for January 27, 2019. Wojak requested the exact dollar amount of unemployment benefits Kendricks had received, thus far from the Texas Workforce Commission, stating Kendricks was required to repay this amount of money to MCH, so Kendricks gave Wojack the information.

7. On January 26, 2019, the day before mediation was scheduled, Wash informed Kendricks that mediation was not going to occur on January 27, 2019 because the TWCCRD mediator had a family emergency. Wojack contacted Kendricks on the morning of January 27, 2019, and informed Kendricks that mediation had been canceled, and stated she would let Kendricks know of the new date set for mediation as soon as she could.

8. Wojak later informed Kendricks that mediation with the TWCCRD mediator had been rescheduled for March 25, 2019, and again Wojack requested the exact dollar amount of unemployment benefits Kendricks had received, thus far from the Texas Workforce Commission, and Kendricks provided her with the information.

9. On March 25, 2019, Kendricks met Wash at the address given to her by Wojak that was the location of the law firm representing MCH. Wash had not spoken to Kendricks, other than via

text message and email in January of 2019, since he met with Kendricks two times in August of 2018. Wash had not discussed mediation with Kendricks, before he led her into a meeting room that was empty, before Marcia Anativarte-Jordan ("Jordan") entered the room and identified herself as a mediator for TWCCRD.

10. Jordan stated to Kendricks and Wash that no other person would be coming into the meeting room because MCH employees did not want to be in the same room with Kendricks. Wash asked Jordan if someone from MCH's insurance company would be attending the meeting and she did not respond to him. Only Wash, Kendricks, and Jordan was in attendance in the meeting room and no other person attended by any manner.

11. Jordan indicated that John Hawkins ("Hawkins") was counsel for MCH and its employees regarding Kendricks' disputes, and then asked Kendricks questions about her claims. Jordan took notes on a legal pad, told Kendricks she had to leave and go speak to MCH's employees in another location in the building, so that she could get information from them about Kendricks' claims. Jordan left the room and soon after Wash left the room.

12. Wash returned to the room, and soon after Jordan returned to the room without any of the information that she agreed to get from MCH's employees, and Wash did not address the matter. Upon returning to the room with Kendricks, Jordan spoke favorably about MCH and its employees, and unfavorably about Kendricks, and Wash remained quiet.

13. Next, Jordan and Wash pressured Kendricks to enter into a settlement agreement with MCH where all terms benefited MCH and none Kendricks. After Wash refused to ask Hawkins for the settlement terms Kendricks wanted in an agreement with MCH, Kendricks ended mediation and left visibly in emotional distress.

14. On March 26, 2019, Kendricks ended her contract with Wash in an email that she copied to Jordan. Wash responded to the email, without copying Jordan, and he attached an Amended TWCCRD Charge of Discrimination that he recommended Kendricks file with the TWCCRD.

15. Kendricks emailed Jordan and requested her to forward Kendricks' case to an investigator and Jordan directed Kendricks to Wash. Kendricks then insisted that Jordan transfer her case and the email she received from Jordan states, "Because of our backlog, please allow 12-16 weeks before your case is assigned to an investigator."

16. Kendricks emailed intake at TWCCRD and inquired on how she could amend a Charge of Discrimination, and Carrie Mills ("Mills") responded in an email that states, "Our records indicate that you have an attorney representing you, Dan Wash. If a significant change needs to be made to the Charge, please let Dan Wash know." Mills is an attorney who works for the TWCCRD.

17. Kendricks emailed a TWCCRD employee, Jose Ceceno ("Ceceno") and specifically asked him about the deadline for her to amend her charge, he did not give her the date, so Kendricks asked Ceceno for the name of his supervisor, and he responded in an email that states, "Carrie Mills is my supervisor."

18. On April 1, 2019, Kendricks received an email from Mills that states, "I am assigning Investigator James Fowler to your case ... Your deadline to amend the Charge is likely approaching so it may be best to provide us with the date of the failure to accommodate, so we can amend it before transferring to EEOC."

19. On April 1, 2019, Kendricks emailed Ceceno, Mills, and James Fowler ("Fowler") to let them know she would be driving from Waco to Austin with her amended charge so that it could be transferred to the EEOC with her case. Fowler's response email states, "There is not any need

to come to the office. I'm in the process of sending you an amended charge for electronic signature. All you need is to receive it by e-mail and sign electronically. It will be e-mailed in a few minutes."

20. Kendricks received an email from Fowler titled, "Amended Charge: Please sign" and information about "DocuSign." Kendricks did not respond to Fowler's email and did not open any document he sent her. Kendricks had not spoken to Fowler, or any TWCCRD employee, about the details and information for an amended charge.

21. When Kendricks arrived at the TWCCRD office, she asked to meet with the person in charge, and Fowler approached her, and he asked to meet with Kendricks. Fowler led Kendricks into an empty meeting room, and after a few minutes of him begging her to leave her case with the TWCCRD, Kendricks left the meeting room. Kendricks then demanded to the officer at the front desk to speak to "the person in charge" and Mills showed up.

22. Mills asked to meet with Kendricks in a meeting room, had a thin file with Kendricks' name on it, and Kendricks refused her request. Kendricks gave Mills her amended charge and a written request for her case to be transferred to the Equal Employment Opportunity Commission ("EEOC"). Then Kendricks asked Mills for a letter as proof of the documents she submitted to the TWCCRD and Mills complied. Mills left the file she had on a table in the front office area, Kendricks stated to her loudly that she left the file, and Mills retrieved it before walking off.

23. In March of 2020, Hawkins filed an unperfected TWCCRD Charge of Discrimination that had Kendricks' name typed, not signed, on the signature line, and a date in October of 2018 stamped on it, in the United States District Court for Western District of Texas Waco Division ("District Court"). This charge is not the TWCCRD Charge of Discrimination Wojak gave to Kendricks that Kendricks reviewed and signed in October of 2018.

24. In July of 2020, Kendricks requested her file from Wash and he sent it to her as an attachment to an email, and the TWCCRD Charge that Kendricks reviewed and signed with Wojak was missing, and the charge Hawkins submitted to the District Court was in the attachment. Kendricks' file was missing documentation to show any attempt made by Wash to resolve her disputes with MCH.

**Breach of Contract Claim Against Wash**

25. Kendricks incorporates all sentences in this document with Wash's name and Wojak's name herein as if fully set forth verbatim.

26. Kendricks had a legal contract with Wash for him to act on her behalf and show an effort to resolve her disputes with MCH. This contract required Wash to file a Charge of Discrimination with the TWCCRD. Kendricks provided Wash with all requested information he needed for a TWCCRD Charge of Discrimination. Wash did not meet his contractual duty when he intentionally or negligently failed to timely file a Charge of Discrimination on Kendricks behalf with the TWCCRD.

27. Wash concealed the fact that under Texas law, Kendricks was not able to legally file the amended charge he recommended she file with the TWCCRD. Wash also did not meet his legal contractual agreement, when he concealed fraud, by failing to inform Kendricks of the Charge of Discrimination with her name typed, and not signed, on the signature line, had been filed with the TWCCRD.

28. Wash's failure to meet his contractual duties are the direct result of harm Kendricks has and continues to suffer. Wash's breach of contract prevented Kendricks from pursuing her claims in Texas courts and forced her to litigate in the federal court system. The damages Kendricks has

and continues to suffer, because of acts in the federal court system that are because of acts and failure to act by Wash, will be detailed below but is incorporated herein as if fully stated verbatim.

**Fraud and/or Aiding and Abetting Fraud Claim Against Wash and Wojak; and Jordan, Mills, Ceceno, and Fowler, in their Official and Individual (Unofficial) Capacities**

29. Kendricks incorporates all sentences in this document with the names of Wash, Wojak, Jordan, Mills, Ceceno, and Fowler herein as if fully set forth verbatim.

30. Wash, Wojak, and Jordan fraudulently misrepresented Jordan to Kendricks as being in an official role, as a TWCCRD mediator, and concealed the fact that Jordan was not acting under any Texas jurisdiction when she met with Kendricks in March of 2019.

31. Wash, Ceceno, Fowler, and Mills concealed the fact that Kendricks could not amend her complaint and pursue all her claims under Texas law.

32. Wash, Fowler, and Mills made false representations to Kendricks that she could amend her charge, and pursue all her claims under Texas law, when in fact she could not.

**Facts Related to Kendricks' First Case in the District Court**

33. On September 3, 2019, Kendricks filed a Complaint (W19CA518) ("First Case") in the District Court against defendants MCH, Judith "Judy" Broadway ("Broadway"), Mark "Moe" William Dozier ("Dozier"), and Julie Spiech ("Spiech") under the following laws: (1) Title VII of the Civil Rights Act of 1964, (2) Age Discrimination in Employment Act of 1967, (3) Americans with Disabilities Act of 1990, (4) Whistleblower Protection, and (5) Chapter 21 of the Texas Labor Law."

34. Kendricks proceeded pro se in her First Case, the United States District Judge Alan D Albright ("Judge Albright") presided and acted both in his official and individual (unofficial) capacities, and counsel for MCH, Broadway, Dozier, and Spiech were Hawkins, John Palmer ("Palmer"), and Roy Barrett ("Barrett").

35. On November 11, 2019, Hawkins filed a motion to dismiss for Broadway, Dozier, Spiech on the basis Kendricks failed to plead a claim under the Family and Medical Leave Act of 1993 ("FMLA"). Also, the "Answer" to Kendricks' Complaint filed by Hawkins on November 11, 2019, did not mention the FMLA.

36. On February 6, 2020, an order by Judge Albright was entered onto the docket and states, "After a review of the complaint and attachments, taking full consideration of the fact Plaintiff filed the complaint pro se, the Court is unable to locate any plausible FMLA claims alleged in Plaintiff's complaint."

37. On February 10, 2020, Hawkins filed a summary judgment motion on behalf of MCH, Broadway, and Dozier for all Kendricks' remaining claims, did so before discovery commenced and while MCH, Broadway, Dozier, Spiech, Palmer, Barrett, and he were all violating the FRCP that govern discovery. Hawkins did not provide Kendricks a copy of this motion as he stated he did in his certification to the District Court regarding this motion. Prior to Hawkins filing this motion, he had emailed Kendricks a copy of all motions that he filed. Hawkins did not email Kendricks a copy of this motion, until Kendricks filed a motion asking the court to compel Hawkins to serve Kendricks a copy of this motion.

38. On February 25, 2020, an order signed by Judge Albright was entered onto the docket and states, "Because the statues discussed above provide causes of actions only against employers as defined in the respective acts…the individual Defendants…are not proper defendants…" and "Broadway, Dozier, and Spiech are dismissed under "Rule 12(b)(6)" of the Fed. R. Civ. P."

39. On April 1, 2020, Kendricks filed a motion seeking summary judgment on all her claims, and to defend against the summary judgment motion Hawkins filed on February 10, 2020, on behalf of MCH, Broadway, Dozier, and Speich collectively. Kendricks' motion identified FRCP

Rule 56 violations, that according to this standard, prevented MCH, Broadway, Dozier, and Speich from being legally granted summary judgment. Judge Albright refused to rule on this motion.

40. The motion Kendricks filed on April 1, 2020, had affidavits attached that specifically showed statements made by Hawkins were false, and contemporaneous evidence was submitted to show affidavits submitted by Broadway, Dozier, Erica Reyes-Rosas ("Reyes-Rosas") and Speich violated FRCP Rule 56 and included false statements. Further, Kendricks argued that Hawkins relied on a fraudulent document, the TWCCRD Charge of Discrimination mentioned above, for summary judgment.

41. From January of 2019, until December of 2020, Kendricks filed motions for court assistance with the evasion and violation of discovery under the FRCP by MCH, Broadway, Dozier, Spiech, Palmer, Barrett, and Hawkins. Judge Albright refused to rule on these motions.

42. Kendricks filed motions making the court aware that MCH President Trey Oakley ("Oakley"); and MCH employees Austin Henry Brown ("Brown") and Sarah Musick ("Musick") were violating executed subpoenas. Oakley, Brown, and Musick did not respond themselves, or by counsel shown on record to represent them, regarding their non-compliance with subpoenas that were never quashed by Judge Albright, who refused to rule on this matter.

43. On September 30, 2020, an order by Judge Albright was entered onto the docket and states Kendricks' First Case is at a "pre-discovery stage." The court docket shows motions Kendricks filed to amend her Complaint to add a claim under the FMLA were all denied, and that Kendricks' Complaint was never amended.

44. On November 6, 2020, Kendricks filed a motion, with contemporaneous evidence attached, to support her request for Judge Albright to strike all affidavits submitted by Broadway, Dozier, Rosas and Speich. Kendricks relied on an affidavit submitted by Broadway that Hawkins filed in

the District Court, and an affidavit that Hawkins and Broadway prepared together and submitted to the EEOC, to show statements made by Hawkins in the motion he filed on February 10, 2020, and statements made by Broadway in her affidavits, were conflicting, contradicting, and false. Judge Albright refused to rule on this motion.

45. The motion Kendricks filed on November 6, 2020, specifically pointed out that affidavits submitted by Broadway and Dozier were based on statements by MCH, who is not a person to be able to make any statement. These affidavits swore to what MCH did, desired, contended, etc. The affidavits included secondhand statements by MCH employees, who could have but did not offer affidavits, and included secondhand statements by unnamed MCH employees.

46. Kendricks made Judge Albright aware that an email dated July 11, 2018, attached to affidavits submitted by Broadway, that Hawkins filed in the District Court, as summary judgment evidence, concealed the fact that Hawkins helped to create this email. Judge Albright refused to address this matter.

47. On December 28, 2020, Kendricks filed "Plaintiff's Motion for Consideration of Defense's Bad Faith Acts," and made Judge Albright aware that Hawkins prepared legal documents for Kendricks, and included her electronic signature on one of the documents. Further, Kendricks made Judge Albright aware that Hawkins was seeking court relief for Broadway, Dozier, and Spiech, who had been dismissed from the case in February of 2020. Judge Albright refused to rule on this motion.

48. In Kendricks' First Case:

a. Judge Albright did not hold any hearings, in person or via teleconference, and never saw or spoke to Kendricks at any time during litigation.

b. Judge Albright denied Kendricks' motions in an entry on the docket that was not followed up with an order and provided no legal basis for his rulings.

c. Judge Albright allowed a document to be filed in the District Court that was sealed from Kendricks.

d. Judge Albright allowed motions to pend on the court docket for extended times, to include over a year, while he fast tracked patent cases.

e. Judge Albright misrepresented disputed facts as undisputed facts, immaterial issues as material issues, and concealed Kendrick' evidence to rule against her.

49. An order by Judge Albright dated April 7, 2021, misrepresents motions Kendricks filed incorrectly under Texas law, as summary judgment motions filed under the Fed. R. Civ. P. 56, the standard that he reviewed them under. These motions had already been denied in previous orders, and no motion for reconsideration of these motions had been filed. These motions were filed in January of 2019.

50. The two motions Judge Albright refers to as Kendricks's summary judgment motions in his order dated April 7, 2021 are: (1) "Texas Rule of Civil Procedure 166(a) No-Evidence Summary Judgment Against Defendants Methodist Children's Home & Judy Broadway for Violation Under the Family and Medical Leave Act;" and (2) "Plaintiff's Motion for No-Evidence Summary Judgment On Defendant Methodist Children's Home's Affirmative Defenses per Texas Rule of Civil Procedure 166(a)."

51. Judge Albright's April 7, 2021 order does not mention Kendricks' motion for summary judgment and to defend against summary judgment, or any of her evidence filed under FRCP 56 that she submitted on April 1, 2020 and November 6, 2020.

52. Judge Albright's April 7, 2021 order misrepresents a motion Hawkins filed on behalf of MCH, Broadway, Dozier, and Spiech collectively that he previously denied. No motion for reconsideration of this motion was filed by Hawkins, who filed this motion in January of 2019, before Broadway, Dozier , and Spiech had been dismissed from the case.

53. Judge Albright's April 7, 2021 order misrepresents a motion Hawkins filed on behalf of MCH, Broadway, Dozier, and Spiech collectively for summary judgment in February of 2020 as "Methodist's" Summary Judgment Motion. No motion was filed just on behalf of MCH for summary judgment at any time in Kendricks' First Case.

54. Judge Albright's April 7, 2021 order relied on fabrications and fraudulent statements, and his own standards to grant multiple summary judgements against Kendricks. Judge Albright granted summary judgment against Kendricks for punitive damages relying on what he called "a matter of completeness."

**Facts Related to Kendricks' First Standard Appeal in the Appellate Court**

55. On April 29, 2021, Kendricks filed a "Notice of Appeal" regarding Judge Albright's judgments in her First Case and her appeal was assigned No. 21-50336 in the United States Court of Appeal for the Fifth Circuit ("Appellate Court"). The notice Kendricks filed states that the judgments in her District Court case are based on "Violation of [her] Constitutional Rights."

56. The caption in this appeal lists the Appellees as MCH, Broadway, and Dozier, however MCH was the only Appellee in this appeal. Kendricks sent an email to a clerk in the District Court Leigh A. Diaz ("Diaz") that states, "Can you please submit to the Fifth [Circuit] Court of Appeals the correction caption for my appeal (6:19-cv-00518)?" Ms. Diaz's response email states, "Ms. Kendrick, the Fifth Circuit has its own numbering system and the case number for your appeal is 21-50336." Diaz did not correct the error as requested by Kendricks.

57. In September of 2021, Kendricks was sending emails to the District Court to have a copy of the Record of Appeal mailed to her and the Appellate Court docket did not include the ROA. Kendricks made a clerk in the Appellate Court aware of the reasons she was not able to file her Appellant's Brief by the due date, and another clerk dismissed Kendricks' appeal when she did not file her Appellant's Brief. Kendricks had to file motions for her appeal was reopened.

58. The copy of the ROA Kendricks received in the mail from the District Court was missing documents and pages from filings, included records that were not possible for her to review, had pages numbered out of order, and did not include the document filed that was sealed from her.

59. In September of 2021, Kendricks filed a motion in the Appellate Court asking the Court "to (1) order sealed exhibits and documents in [her] case to be unsealed and included in the record of appeal; and (2) include all exhibits in this case in the record of appeal." Kendricks relied on Rule 10(B)(2) and Rule 10(a)(1) of the Federal Rules of Appellate Procedure" for her requests. At the time Kendricks' filed this motion, the ROA was not on the court docket.

60. In October of 2021, Hawkins filed a Response Motion to Kendricks' Motion described in the above paragraph 59, and his motion shows and states the following:

a. "The undersigned counsel of record for Appellee Methodist Children's Home, certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.1 have an interest in the outcome of this case. These representations are made in order that the judge of this court may evaluate possible disqualifications or recusal." Counsel for "Philadelphia Insurance Companies," who is "John Hawkins," is undisclosed in the motion and concealed from the Appellate Court.

b. "The only question before this Court is whether the summary judgment granted by the District Court to Methodist Children's Home was proper. No records sealed in the

District Court was used as evidence by either party in connection with that Motion or Ms. Kendricks opposition to that motion. Thus, no review of those exhibits are necessary for Ms. Kendricks to present her argument or for this Court to decide that question." Hawkins did not state any FRAP Rule relied on, any legal authority that supported his response, and offered no evidence for any of the claims he made.

61. In October of 2022, Kendricks filed a Reply Motion to Hawkins' Response Motion that states, "Kendricks moves this Court to disregard all statements made by Hawkins that are irrelevant, unsubstantiated, not based on firsthand or personal knowledge, and where he shows no competence to make such statements ... It is not possible for Hawkins to know if the district court was or was not influenced by exhibits and sealed records unless ex parte communication has occurred ... Kendricks was not provided a copy of the records sealed from her and the public by any counsel on record or the district court." Kendricks submitted a Declaration to support her claims. Kendricks needed the ROA to be complete and accurate, so that she could rely on such to prove her rights under the Constitution were violated, and she made the Appellate Court aware of this.

62. Kendricks made a Deputy Clerk in the Appellate Court, Laney Lampard ("Lampard") and the Clerk of the Appellate Court, Lyle C Cayce "(Cayce") aware that motions filed by Hawkins violated the FRAP, and Hawkins' motions were still forwarded to Circuit Judges, Hawkins continued to receive favorable rulings.

63. Kendricks wrote two letters to Cayce regarding this matter, and Lampard continued to forward motions by Hawkins that violated the FRAP to Judges that ruled in his favor, and did so at times before Kendricks' time to file a Reply Motion per the FRAP expired. A motion Kendricks

filed that included evidence to prove Hawkins deliberately made a false statement to the court was not forwarded for a ruling.

64. In October of 2021, Kendricks made a request to Lampard and the Appellate Court Webmaster, Margaret Dufour ("Dufour") to correct a title of a motion she filed. The motion Kendricks filed was titled, "Appellant's Supplemental Motion per Rule 40 of the Federal Rules of Appellate Procedure for Reconsideration of Acts by a Clerk," and Lampard titled this motion on the docket as "Exhibits in Support of Motion for Reconsideration." Lampard, nor Dufour, corrected the error and Kendricks' motion was not forwarded for a ruling.

65. In October of 2021, Kendricks made a specific request to Lampard to receive a reasonable accommodation and Lampard did not respond to the request in any manner. In an email dated 10/14/2021, Kendricks explicitly explained the basis for the reasonable accommodation request and Lampard still did not respond.

66. In November of 2021, an order by Circuit Judge Catharina Haynes ("Judge Haynes") was entered onto the docket and states, "IT IS ORDERED that the appellant's opposed motion to file and unseal sealed documents is ruled upon as follows: the motion to unseal the documents is DENIED. The request to file sealed documents before this court is DENIED as MOOT, as this court already has sealed documents in the records before the court." The relief denied is not the relief Kendricks requested. Judge Hayne refused to rule on the specific relief Kendricks requested.

67. In November of 2021, Hawkins filed a motion requesting Kendricks' appeal be dismissed, and Kendricks responded with evidence to show Hawkins did not comply with the FRAP, and made a request for Hawkins' motion to be struck from the record. A note was entered onto the docket stating Hawkins' motion would not be forwarded, because of an error by Hawkins, and advised him on the matter. Kendricks' motion was not forwarded for a ruling.

68. In November of 2021, Hawkins filed a motion requesting the Appellate Court deny Kendricks' limited remand request by relying on a false statement that he made to the Appellate Court. Kendricks responded with evidence to show Hawkins intentionally made a false statement to the Appellate Court, and then asked for Hawkins' motion to be struck from the record. Kendricks' motion was not forwarded for a ruling.

69. In November of 2021, Kendricks' appeal was dismissed again by a clerk in the Appellate Court. The motion Kendricks filed for a Single Judge to reconsider the dismissal of her appeal by a clerk, as allowed by the Court Rules, was not adhered to, and her motion was denied by a clerk.

70. Kendricks' appeal was reopened by Judge Haynes, who reduced the number of days for Kendricks to file her Appellant's Brief that the Appellant Court allows, but did not reduce the number of days for Hawkins to file his Appellee's Brief that the Appellate Court allows. Kendricks, a pro se litigant, made the Appellate Court aware of her physical and emotional conditions. Hawkins failed to make the Appellate Court aware he attended the same law school, at the same time, as the Chief Justice Priscilla Owen ("Judge Owen") of the Appellate Court.

71. At the time Kendricks prepared her Appellant's Brief, the ROA was not on the docket for Kendricks to rely on to prove her appeal issues. Kendricks' motions filed to remedy this issue were all denied in court orders that did not state the legal reason for denying Kendricks the relief she requested that complied with the FRAP.

72. Kendricks sent a letter to Lampard and Cayce dated 12/15/2021 that neither responded to states, "In my review of the FRAP, I have observed discrepancies in my case managed by Mr. Lampard and acts made by Mr. Cayce regarding the rules and procedures governing the appeal process."

73. In December of 2021, Kendricks' access to Pacer was restricted due to non-payment. Kendricks received an email from Dufour that states, "Having your PACER account disabled will have no effect on your case. You can still receive Notices of Docket Activity and receive ONE FREE look at each document with an account that is disabled for non-payment." Kendricks never received "Notices of Docket Activity" or "ONE FREE look at each document" filed in her case. After receiving this email, Kendricks sent an email to Dufour and Lampard that states, "I still cannot get into pacer and the Appellee filed a motion today and I was not notified by the court as stated below in your email."

74. In December of 2021, Kendricks sent an email to Dufour and Lampard that states, " The Appellee filed a motion on yesterday and I have not received an email from the court regarding this motion. I have no idea if there has been any court activity since my account was disabled. I'm in the dark here."

75. In December of 2021, later in the month, Kendricks sent an email to Dufour, Lampard, the district court clerks, Hawkins, Palmer, and Barrett that states, " Hello everyone, please be advised that I do not have access to pacer and it is not safe for me to run to and from the courthouse to use the pacer account amid a the pandemic we are in ... I would appreciate any accommodation you are willing to make in this situation." No one responded.

76. In March of 2022, an opinion was issued in Kendricks' appeal, "per Curiam," from the United States Court of Appeals for the Fifth Circuit by Circuit Judges Cory Wilson ("Judge Wilson"), Leslie Southwick ("Judge Southwick"), and Andrew Oldham ("Judge Oldham") and states the following:

a. "Sheila Kendricks, an African American woman over the age of forty, sued Methodist Children's Home;" however, Kendricks' Complaint shows that she sued MCH, Broadway, Dozier, and Spiech.

b. "Her suit arose from her termination by Methodist;" however, the ROA shows Kendricks' suit arose from being denied three promotions, getting no response from her requests for accommodations, and retaliation for engaging in protected activities.

c. "While on leave, Kendricks applied for two other jobs;" however, the record shows Kendricks' applied for two promotions before going on leave, and was contacted by Reyes-Rosas, while she was on leave, to apply for another promotion.

d. "While on leave, Kendricks also filed a complaint with Methodist regarding a possible racially discrimination hiring practice suffered by one of her co-workers;" however, the record of appeal shows Kendricks filed grievances at MCH regarding discrimination against her, a violation of her Health Insurance Portability and Accountability Act, and reported harm done to others at MCH to support her grievances.

e. "Both Kendricks and Methodist filed motions for summary judgment prior to the start of discovery;" however, the record of appeal shows MCH, Broadway, Dozier, and Spiech filed for summary judgment, not "Methodist," and did so after Kendricks' filed motions regarding their evasion of discovery that had not been ruled on; and then Kendricks filed for summary judgment in the motion she filed to defend against summary judgment.

f. "After the parties conducted some discovery;" however, the record of appeal shows absolutely no discovery occurred.

g. "The district court had subject matter jurisdiction ... [because] the attachments to her complaint specifically mention the Family and Medical Leave Act and her leave taken thereunder. Her contention that the district court lacked jurisdiction [under the Family and Medical Leave Act of 1993] is therefore without merit;" however this is not the basis for jurisdiction per the Constitution.

h. "... Kendricks's arguments related to the district court's summary judgment ... that Methodist's affidavits were perjurious ... The statements regarding other individuals' promotion are wholly premised on the best of the affiants' knowledge and belief. This is exactly what Federal Rules of Civil Procedure 56(c) requires;" however this is not the standard for this rule.

77. The opinion by Judges Wilson, Southwick, and Oldham, in Kendricks' appeal, states, "This case was considered on the record on appeal" and "IT IS FURTHER ORDERED that plaintiff-appellant [Kendricks] pay to defendant-appellee [MCH] the costs on appeal to be taxed by the Clerk of the Court." At the time of this litigation, the docket showed no record on appeal, and after litigation ended, the docket in this case was manipulated.

78. In March of 2022, Kendricks emailed Judges Wilson, Southwick, and Oldham and the email states, "Mr. Leslie Southwick, Mr. Cory Wilson, and Mr. Andrew Oldham: Please be informed that I am filing suit against the three of you, and others to include Mr. Lyle Cayce, for violating my federal rights, committing fraud, and obstructing justice in case 21-50336. In the event you want to keep up with my progress concerning this suit, please view my public Facebook posts." Kendricks attached a picture of her Facebook page to the email.

**Facts Related to Kendricks' Second Case filed in the District Court**

79. After Judge Albright stated in orders that Kendricks did not plead an FMLA claim, and did not state any claim against Broadway, Dozier, and Speich in her Complaint W19CA518, Kendricks filed a second Complaint (6:20-cv-01006-ADA) ("Second Case"), in the District Court on October 30, 2020, against MCH, Broadway, and Dozier for claims under the FMLA and Tort Laws.

80. Kendricks' proceeded pro se in her Second Case that was referred to Magistrate Judge Jeffrey C. Manske ("Judge Manske") without her consent, and without her being told of her right to withhold consent for a magistrate judge to preside over her Second Case.

81. Hawkins Answered Kendricks' Complaint in his filings and he also filed a Motion to Dismiss on behalf of MCH, Broadway, and Dozier.

82. Judge Manske ignored Kendricks requests and granted relief requested by Palmer and Hawkins in notes entered onto the docket, and without stating the legal basis for his rulings.

83. After Kendricks filed reconsideration motions regarding motions that she filed that were denied with no reason stated for the rulings, an entry was entered onto the docket and it states, "Plaintiff is further admonished that further repeat filings of denied motions…may result in the imposition of sanctions…" and that the court could "levy sanctions in response to abusive litigation practices…."

84. Kendricks filed an Interlocutory Appeal notice regarding her Second Case in the District Court on February 10, 2021 that states, "This appeal is filed so that I can know the legal reason two motions (ECF No. 13 and ECF No. 16) [sic] that I filed were denied; and if no legal reason exists, I am asking for these rulings to be overturned per my Constitutional Right to have due process and fair legal proceedings."

85. On April 29, 2021, after Kendricks filed motions for court assistance with MCH, Broadway, Dozier, Hawkins, Palmer, and Barrett evading discovery, an entry was made on the court docket that states, "Case Stayed" and "Sealed Document filed" and this document was sealed from Kendricks.

86. Judge Manske repeatedly made decisions in Kendricks' Second Case that benefited the defendants, and did not submit any Orders, Reports, and Recommendations or state on record the basis of his decisions at the time they were made.

87. The Appellate Court responded to Kendricks' Interlocutory Appeal in an order dated May 24, 2021, and states, "Here, the parties did not consent to have a magistrate judge preside over the case" as the reason for the dismissal of Kendricks Interlocutory Appeal.

88. Hawkins and Palmer continued to submit motions and Manske continued to grant the relief they requested. Judge Manske did so with this order from the Appellate Court and Kendricks' objections to him presiding over her Second Case on record.

89. On July 25, 2021, Kendricks filed a motion for a "case review" and requested Judge Albright review all decisions made by Manske in her Second Case. In this motion, Kendricks challenged Judge Manske' jurisdiction to preside over her case, and stated that a 30-year long relationship between Judge Manske and Palmer could be the reason Judge Manske was ruling in favor of Palmer's clients, and not offering a reason for his decisions. This motion mentioned that Judge Manske and Palmer both attended the same law school for approximately a year, clerked for the same judge in the District Court for a brief time, (3) and had a "judge-mediator" relationship in the District Court at the time of both Kendricks' cases.

90. On July 26, 2021, Kendricks filed an advisory in the District Court that states, "Plaintiff Sheila Denise Kendricks advises the Honorable Judge Alan D Albright that on July 26, 2021, [the

correct date of Kendricks' filing was July 23, 2021] she filed a motion for this case to be reviewed by the Honorable Judge Albright. This motion…was referred to Magistrate Jeffrey C. Manske and Plaintiff does not consent to Magistrate Jeffery C. Manske presiding over any matter in this case….” Diaz referred this motion to Judge Manske.

91. A “Report and Recommendations of the United States Magistrate Judge” signed by Judge Manske and dated July 28, 2021, was entered onto the docket before a case review had been conducted by Judge Albright. In this document, Judge Manske misrepresents the dismissal of Broadway and Dozier from Kendricks’ First Case, and dismissed Broadway and Dozier from Kendricks' Second Case under the doctrine of Res Judicata.

92. An “Order and Report and Recommendations of the United States Magistrate Judge” by Judge Manske signed on July 30, 2021, before a case review had been conducted by Judge Albright, relies on fraudulent statements to support his decisions that adversely affected Kendricks.

93. On August 12, 2021, Kendricks filed a motion that she titled, “Motion to Respond to the Report and Recommendation Submitted by Magistrate Jeffrey C. Manske’ Report” and the motion states that Kendricks “…moves the Honorable Judge Alan D Albright to allow her to respond to the ‘Report and Recommendation’ submitted by [Judge] Manske. Plaintiff received this document in the mail on August 3, 2021, thus her deadline to respond is August 17, 2021." This motion also states, "Plaintiff is currently ill and in physical pain due to misconduct shown by Magistrate Manske…Plaintiff files this motion out of fear that Magistrate Manske will continue his attempt to illegally dispose of her case….”

94. On August 16, 2021, a two page “Order Adopting Magistrate Judge’s Report and Recommendation” signed by Judge Albright did not address the jurisdictional or any other issue made by Kendricks on court record. This order states “Plaintiff filed objections on August 12,

2021" and this order also states, "The Court has conducted a de novo review of the record as a whole" and Kendricks had not yet filed her objections. This order overruled Kendricks' objections that were not on record yet.

95. The court docket shows that Kendricks filed her "Written Objections to Every Decision Order and Report and Recommendation Submitted by Magistrate Jeffrey C. Manske" on August 17, 2021 and this document states:

a. "Pursuant to 28 U.S.C. Code § 636 (b)(2), no consent from the parties was executed for Magistrate Manske to be the presiding judge in this case. Fed. Rule Civ. Proc. 73(b), 'which requires the parties to 'execute' (meaning write down and sign) a consent' did not happen." Therefore, Plaintiff objects to all orders and decisions, non-dispositive and dispositive, and made by Magistrate Manske in this case and requests these orders and decisions are rejected immediately."

b. "Article III of the U. S. Constitution says that the 'judicial power' of the U. S. government is exercised by judges ... who have been appointed by the President and confirmed by the Senate. Plaintiff demands her Constitutional right for her case to be presided over by an 'Article III Judge" and not a magistrate judge per the U. S. Constitution. Plaintiff did not give her consent to not receive this right under the U. S. Constitution."

c. "No specific cause of action is stated by Judge Manske to support his determination that claim splitting, claim preclusion, and/or res judicata bars this case."

d. "I did not consent to Magistrate Jeffrey C. Manske presiding over my second case. No referral [for a magistrate judge to preside] signed by me is on record in this case." [This is stated in Kendricks' affidavit incorporated into this motion.]

e. “Defendants answered my complaint in two filings [they filed jointly] with a general denial to the claims and damages I suffered....I asked the court twice to rule on this matter...and the court did not respond.” [This is also stated in Kendricks’ affidavit incorporated into this motion.]

96. Judge Albright dismissed Broadway and Dozier from Kendricks' first Complaint under FRCP 12(b) for a failure by Kendricks to state a claim upon which relief could be granted; afterward, Judge Albright dismissed Broadway and Dozier from Kendricks second Complaint also under FRCP 12(b) and the doctrine of res judicata, by fraudulently stating Kendricks' claims against Broadway and Dozier had been "adjudicated" and may not be pursued because such claims have been resolved by the District Court already.

97. An order by Judge Albright, dated, October 28, 2021, denied Kendricks’ motion to appeal in forma pauperis and states, “Plaintiff’s appeal...is not made in good faith because the Court’s referral of this case to the Magistrate Judge did not require Plaintiff’s consent.” This order made statements of fraud.

98. Kendricks sent emails to Diaz and/or the district court clerk that state:

a. In July of 2021: "Ms. Diaz, Can you please edit the record for accuracy? I did not use the word "referral" because I never received a referral for a magistrate. The information you entered is not what I submitted." Ms. Diaz's response email states, "Ms. Kendrick, the docket entry has been modified per your request." [W20CA1006]

b. In July of 2021: "Please provide me with a copy of all recommendations and legal basis for all decisions made by Magistrate Manske. I have never received this information." Ms. Diaz's response email states, "Ms. Kendrick, as of 7/28/2021, a Report and Recommendation has not been entered in your case." [W20CA1006]

c. In July of 2021: "I would like a copy of the referral for magistrate judge as I have never seen one." Ms. Diaz's response email states, "Ms. Kendrick, regarding the referral to a Magistrate Judge, the court issued a standing order on June 8, 2020, referring specific cases to Magistrate Judge Jeffrey C. Manske." Kendricks did not receive a copy of the referral form for magistrate judges; and a standing order can not be relied on to deprive and violate Kendricks of her rights under the Constitution.

d. In September of 2022: "Court of Clerk: Magistrate Jeffrey C. Manske is not listed as a judge on the appellate court docket in this case. Can his name be added since he presided over the case and not Judge Alan D Albright who is the only judge listed." The identity of the responding clerk is not disclosed and the email states, "Ms. Kendricks, Judge Manske is not listed on the case because the case is no longer referred to him. It was referred to him for pretrial review and then he was taken off the case so that Judge Albright could make the final disposition. Judge Manske's name appears throughout the case as the judge entering non-dispositive orders, however." The docket shows that Judge Manske presided over the entire case, did so after Kendricks objected on record to him doing so, moved on his own and dismissed Kendricks' case based on determinations not supported by the record or any legal standard. This response to Kendricks' is fraudulent. [W20CA1006]

e. In September of 2021: "Please mail a complete copy of both my case records to my home address." The identity of the responding clerk is not disclosed and the email states, "To access sealed portion of the record on appeal you must first petition the Fifth Circuit, and if that is granted, the Fifth Circuit will direct us to send you the sealed portion. This is in accordance with the Fifth Circuit Rules of procedure [no exact FRAP rule is stated]." These are fraudulent statements.

**Facts Related to Kendricks' Second Standard Appeal in the Appellate Court**

99. Kendricks filed a "Notice of Appeal" in the District Court that states, "...Plaintiff Sheila Denise Kendricks, pro se, appeals the Honorable Judge Alan D. Albright's adoption of all recommendations and orders made by Magistrate Jeffrey C. Manske. Plaintiff did not consent to Magistrate Manske presiding over this case and he did so without jurisdiction and by violating Plaintiff's rights under the Constitution. Magistrate Manske and John P. Palmer, a counsel in this case, have a thirty-year long relationship that cause[d] justice to be obstructed that was assisted by the Honorable Judge Albright."

100. On December 14, 2021, Kendricks' second appeal, 21-50818, was dismissed by Deputy Clerk, Roshawn Johnson ("Johnson"), without any prior warning, no prior notice of any deficiency, or any opportunity to remedy any deficiency. The dismissal notice falsely states Kendrick' appeal was dismissed "Under 5th Cir. R. 42.3;" however the manner in which Johnson dismissed Kendricks' appeal is in conflict with this rule, and is in conflict with the manner this rule states appeals by unrepresented litigates must be dismissed.

101. At the time Johnson dismissed Kendricks' second appeal, 21-50818, Kendricks was litigating in her first appeal, 21-50336, in the same Appellate Court, and had a Reply Motion and Appellant Brief due within an overlapping time of roughly two weeks, and was waiting on the District Court to rule on her motion to proceed in forma pauper in her second appeal, 21-50818.

102. After Johnson illegally dismissed Kendricks' second appeal, Kendricks emailed the District Court and requested a copy of the certification made by Judge Albright that denied her motion to proceed in forma pauperis in appeal. The District Court denied Kendricks' request and stated that it had documentation that the order had already been mailed to Kendricks.

103. In January of 2022, Kendricks sent an email to Dufour and Johnson that states, "Ms. Roshawn Johnson stated she dismissed my appeal pursuant to 5th Cir. R. 42.3" and "I do not see any FRAP Rule regarding this process stated to me by Ms. Johnson and she was not able to state anything other than the FRAP Rule stated above. Please advise what authority Ms. Johnson is proceeding under so that I will know how to legally and appropriately respond?" Dufour, nor Johnson, was able to inform me of any FRAP Rule that was consistent with the manner Johnson dismissed my appeal. Dufour ended the conversation by letting me know that Johnson could "rule on motions in accordance with the rules."

104. Kendricks was informed by Johnson that if she filed an updated financial affidavit, a review would be made regarding her application to proceed in her appeal in forma pauperis. Kendricks complied and there was no review. Kendricks was informed by Johnson that if she paid the appeal fees for her appeal, 21-50818, her appeal would be reinstated. Kendricks paid the appeal fees and her appeal was not reinstated.

105. Kendricks filed a motion for her appeal, 21-50818, to be reopened and none of the Appellees or Hawkins responded on court record to object the relief Kendricks requested. Kendricks provided facts and evidence to show a lack of jurisdiction in the Second Case she filed in the District Court. An order signed by Circuit Judge Greg Costa ("Judge Costa") stated Kendricks' motion was denied, threatened her with sanctions, and did not state the legal basis for his ruling.

106. Kendricks filed a motion for reconsideration of Judge Costa denying her request to reopen her appeal, based her request on fraud that she submitted evidence to support, and none of the Appellees or Hawkins responded on court record to object the relief Kendricks requested. The

three panel Judge Southwick, James Graves ("Judge Graves") and Costa denied Kendricks request on the basis that Costa had already denied her request.

107. Kendricks sent copies of the docket to show the District Court falsely stated to the Appellate Court that Judge Albright presided over her Second Case, and it was Judge Manske who presided over her Second Case, and Judges Costa, Graves, and Southwick did not respond to this matter.

108. Kendricks made Judges Costa, Graves, and Southwick aware that Johnson did not dismiss her appeal according to the FRAP, and this matter was ignored, along with the other issues of fraud she made them aware of in her motions. Kendricks attached the letter she sent to Cayce to her motion she filed for her appeal to be reopened, and Judges Costa, Graves, or Southwick did not respond.

109. Judges Costa, Graves, and Southwick did not respond to Kendricks' appeal issues of her being subjected to a judgment, without jurisdiction, fraud upon the court, fraud committed against her, and violations of her rights under the United States Constitution.

110. Relief Kendricks requested in her appeal, 21-50818, was denied in orders that did not cite a legal standard or give any reason for the denial of the relief she requested.

111. Kendricks' filings were not forwarded in accordance with the rotation system of the Fifth Circuit Court. Judge Costa ruled consecutively on two motions Kendricks filed, within 14 days, in appeal 21-50818; and Judge Southwick ruled on a motion Kendricks filed in February of 2022, in appeal 21-50818, and her Appellate Brief in March of 2022, in appeal 21-50336.

**Facts Related to Appellate Court Chief Justice and Appellate Court Employees**

112. Kendricks received two letters from the appellate court for both her appeals, 21-50336 and 21-50818, and both letters state, "**Sealing Documents on Appeal:** Our court has a strong presumption of public access to our court's records, and the court scrutinizes any request by a

party to seal pleadings, record excerpts, or other documents on our court docket. Counsel moving to seal matters must explain in particularity the necessity for sealing in our court. Counsel do not satisfy this burden by simply stating that the originating court sealed the matter, as circumstances may have changed that justified sealing in the originating court may have changed or may not apply in an appellate proceeding.

113. In February of 2022, Kendricks was still emailing Dufour for assistance with Pacer and Lampard never responded to the matter and ignored Kendricks requests for help with Pacer and other issues in litigation.

114. Finally, Kendricks was granted free access to Pacer in one of her appeals, and not the other appeal, and threatened with sanctions if she accessed the appeal she was not given free access to. Kendricks relied on the same motion and same evidence for free access to Pacer.

115. On March 25, 2022, Kendricks sent an email to Cayce that states, "Mr. Cayce, please forward the email below to the Chief Justice and indicate you have done so ... I am handling this matter in a manner to show the court that I exhausted all resources before filing suit." The messages Kendricks asks to be forwarded states, "To the Honorable Chief Owens: Please be aware that I am filing suit against Mr. Lyle Cayce and three of his deputy clerks for acts that are non-jurisdictional and have caused harm to me."Cayce's response email states, "I will not forward this email to the Chief Judge, as it is improper for a litigant to have email communication with the Chief Judge or any other Circuit Judge." Cayce misrepresented Kendricks' email to appear as her wanting to have contact with the Chief Judge, as a litigant, and not as a complainant, as indicated in email.

116. Kendricks sent a letter to Judge Owen regarding the illegal acts committed against her and received no response. Kendricks posted the letter on her Facebook page.

117. In April of 2022, Kendricks received an email from Dufour that had a letter attached dated "April 5, 2022" and signed by "Thomas B. Plunkett" Chief Deputy of the Appellate Court. The letter states:

> "We previously advised you that communicating directly with judges was improper, but you have continued such direct communications. Accordingly, we are blocking your ability to email any court personnel, including judges, or submit anything via the Pro Se Email box ... I have directed our staff to neither acknowledge or respond to anything submitted by email ... Continued failure to again follow court instructions, directives, and procedures may result in referral to the court for sanctions or other appropriate action."

118. The letter Kendricks received from Plunkett misrepresented her acts, relied on facts and evidence that did not exist, and prevented her from exercising her rights per the FRAP, violated her constitutional rights, and aided and abetted fraud and other illegal acts committed against her by federal employees in their official capacities and/or personal capacities.

119. On July 26, 2022, Kendricks sent an email to Nancy Dollie, Dufour, Lampard, and Cayce that states, "Ms. Nancy Dollie: Per the Court of Appeals, Fifth Circuit website, you hold the position of an 'opinion specialist.' The legal disputes that I have with federal employees of said court cannot be resolved by you or under your authority." Nancy Dollie had left Kendricks a voicemail regarding a correspondence after Kendricks wrote a letter to Judge Owen.

**Deprivation and/or Violation of Kendricks' Rights Under the Constitution Claim Against Judges Owen, Albright, Manske, Haynes, Wilson, Oldham, Southwick, Costa, and Graves; Clerks Cayce, Diaz, Plunkett, Lampard, Johnson, Diaz; and Webmaster Dufour for Acts in their Official and Individual (Unofficial) Capacities**

120. Kendricks incorporates all sentences in this document with the names of Judges Manske, Haynes, Wilson, Oldham, Southwick, Costa, and Graves, and the names of Cayce, Diaz, Plunkett, Lampard, Johnson, and DuFour herein as if fully set forth verbatim.

121. Kendricks alleges these defendants deprived and violated her rights, under the Constitution, to life, liberty, and property without due process of law. Specifically, Kendricks alleges these defendants engaged in acts that prevented her from relying on federal laws, standards, and procedures, as a recourse for acts committed by MCH, Broadway, Dozier, Spiech, and/or Reyes-Rosas that have and continue to cause her to suffer damages.

122. Kendricks alleges these defendants have prevented her from the exercise of her Fourteenth Amendment rights to have equal protection under federal laws. Specifically, Kendricks alleges these defendants have prevented her from suing MCH, Broadway, Dozier, Spiech, and/or Reyes-Rosas and/or receiving legal judgments under federal laws, standards, and procedures for acts committed by MCH, Broadway, Dozier, Spiech, and/or Reyes-Rosas that have caused and continue to cause her to suffer damages.

123. Kendricks alleges Judge Albright deprived and violated her rights under the Constitution, when he allowed documents to be filed and sealed from her, and failed to indicate in his orders, if he relied on any information in these documents. Kendricks alleges Judges Wilson, Oldham, and Southwick aided Judge Albright in this matter by affirming his judgments.

124. Kendricks alleges Judges Albright and Manske, acted without jurisdiction, intentionally and/or negligently, separately, and together, and issued judgments against Kendricks that are void, and Diaz aided them in this matter, and Judges Costa, Graves, Southwick affirmed these acts.

125. Kendricks alleges Judge Albright relied on his standing order to deny her the right to an Article III Judge that the Constitution guarantees to her, and Judge Manske and Diaz aided him in this matter.

126. Kendricks alleges Judge Haynes denied her the right to file an Appellant's Brief by relying on the entire and complete Record on Appeal, to have the time allowed in the Appellate Court to prepare and file her Appellant's Brief, and Diaz and Lampard aided her in this matter.

127. Kendricks alleges Judge Albright, due to acts by the District Court employees, and Judge Owens, due to the acts of Appellate Court employees, deprived and violated her rights under the Constitution.

128. Kendricks alleges Judge Owens, due to the acts of Appellate Court employees, denied her the right to request relief per the FRAP, and for her appeals to be dismissed in accordance with the FRAP governing the dismissal of appeals by unrepresented (pro se) litigants.

129. Kendricks alleges that it is a violation of her rights under the Constitution for a clerk and/or case manager to rule on her motions.

130. Kendricks alleges that it is a violation of her rights under the Constitution for clerks in the Appellate Court to refuse to forward her motions for a ruling, advise an attorney on the docket, and ignore her complaints of them violating her rights.

131. Judge Albright in the cases Kendricks filed in the District Court, and Judges Wilson, Oldham, Southwick, Costa, and Graves in the cases Kendricks filed in the Appellate Court, did not show the "Good Behaviour" required by the Constitution that they received compensation for, from taxpayers. Specifically, Kendricks alleges it is not "Good Behaviour" for a judge to engage in illegal behaviors, and other judges to ignore such illegal behaviors, and refuse to vacate void judgments.

**<u>Negligence Claim Against Judges Albright, Owens, Haynes, Wilson, Oldham, and Southwick for Acts in their Official Capacities, and the United States for Such Acts</u>**

132. Kendricks incorporates all sentences in this document with the names of Judges Manske, Haynes, Wilson, Oldham, Southwick, Costa, and Graves, and the names of Cayce, Diaz, Plunkett,

Lampard, Johnson, and Dufour herein as if fully set forth verbatim. Acts by District Court employees, who act under the authority of Judge Albright, are alleged against Judge Albright; Acts by Appellate Court employees, who act under the authority of Judge Owen, are alleged against Judge Owen.

**Facts Related to MCH, its Board of Directors, Employees, and Attorneys**

133. MCH's "Responsibilities of the Governing Body" policy states, "...specifically and explicitly, it is understood that the Board of Directors is responsible for and has authority over all policies and activities of the Corporation." Based on this governing document, Kendricks alleges all claims committed by MCH, MCH's employees, MCH's attorneys, and MCH's Board of Directors are alleged against all MCH's Board of Directors who served during the times acts by MCH, MCH's employees, MCH's attorneys, and MCH's Board of Directors were committed against Kendricks.

134. Since Kendricks first contacted Hawkins in late March of 2019, via email, to let him know that she was no longer represented by counsel, he has not met with her in person or spoke to her by phone. Kendricks called Paula Cooper ("Cooper"), his paralegal or legal assistant, and hung up without leaving a message when she did not answer the call, and Hawkins emailed Kendricks and stated no phone calls. Kendricks has had no contact, except via email, with Hawkins, Palmer, or Barrett.

135. Hawkins and Palmer repeatedly harassed Kendricks for her posts on Facebook, and when Kendricks asked Hawkins to state what law she was violating with her Facebook posts, Hawkins and Palmer did not respond, and continued to harass Kendricks for her Facebook posts. In July of 2021, Palmer filed a motion in the District Court, made a false certification that he provided

Kendricks a copy of the motion, and Judge Manske ruled against Kendricks the next day. Kendricks complained about this on Facebook.

136. Palmer did not disclose that he was a mediator in the District Court and has had a thirty plus year long relationship with Judge Manse, and Hawkins and Barrett concealed the relationship between Palmer and Judge Manske. Hawkins did not disclose that he attended law school with Judge Owens when Kendricks asked him why the Appellate Court was ruling in his favor without him requesting the Appellate Court to do so.

137. Kendricks made Hawkins, Palmer, and Barret aware of the specific acts and the specific damage that such acts caused her, and they continued to engage in these harmful and illegal acts. Kendricks made Oakly, Clifton Howard ("Howard") and Bill Bingham ("Bingham") aware of the acts by MCH attorneys that caused her damage and Hawkins, Palmer, and Barrett continued to engage in such acts.

138. Hawkins, Palmer, and Barrett engaged in fraud upon the court as court officers; obstructed justice in Kendricks cases filed in the District Court; and Hawkins committed fraud upon the court and obstructed justice in the cases Kendricks filed in the Appellate Court. Kendricks sent Howard and Bingham copies of motions Hawkins filed in the District Court to support her claims and Hawkins continued to engage in such behaviors.

139. While Oakley was in violation of an executed subpoena to produce document that would help resolve a racial discrimination claim, he sought and received a PPP loan. The application for the PPP loan requires the applicant to adhere to federal laws. At the very time that Oakley was seeking a PPP loan, he was actively violating a subpoena executed in a federal court.

140. After MCH received a PPP Loan, the highest paid employees all received a significant raise, and then the next year, these highest paid employees' salaries decreased back to their

generous amounts. MCH's Form 990 for 2020 tax year shows a net asset of over $637 million and states, "The PPP loan was fully forgiven in June of 2021 and recorded as gain…."

141. Dozier stated in an affidavit that Hawkins filed in the District Court that he "retired from MCH on January 24, 2020," and MCH's Form 990 for 2020 states Dozier received "compensation" for an "Average hour per week" of "40" in an amount over $150,000.

142. MCH and/or MCH Board Members used their resources to retaliate against Kendricks after she exercised her protected rights in 2018, and as of the date of this filing, Kendricks continues to suffer harm from retaliation by MCH and/or MCH Board Members.

**Facts Related to Kendricks' Claims Against Texas Department of Adult and Protective Services Employees'**

143. In May of 2021, Kendricks' younger brother had two massive strokes with significant brain bleeding and was not expected to live. He was released from the hospital into Kendricks and her mother's care. Kendricks, her mother, and other family sought medical treatment for him and provided care for him in Kendricks' home.

144. In early June of 2021, Kendricks sent an email to attorneys Hawkins, Palmer, and Barrett and MCH Board Members Howard and Bingham that states, "My baby brother had a massive stroke and was not expected to live. I am caring for him at this time. I am also in a lot of pain and dealing with health issues of my own. I am sharing this information for litigation purposes - my inactivity."

145. In early June of 2021, Reyes-Rosas was employed by the medical clinic Kendricks' brother was receiving treatment from. Reyes-Rosas documented that she had an appointment with Kendricks' brother and gained access to his medical chart. However, Reyes-Rosas did not have an appointment with Kendricks' brother and did not have consent or any legal reason to access his medical record. Reyes-Rosas violated the Health Insurance Portability and Accountability Act.

Acts by MCH, its Attorneys, and District Court Employees have prevented Kendricks from suing Reyes-Rosas when she violated Kendricks' Health Insurance Portability and Accountability Act. Kendricks claims Reyes-Rosas continues to retaliate against her because she is exercising her protected rights against acts Reyes-Rosas committed against her at MCH. Kendricks reported the actions of Rosas-Reyes to her employer and was informed that Rosas-Reyes stated that an attorney asked her to access Kendricks' brother's medical records so she did.

146. In June of 2021, a Texas Department of Adult Protective Services employee from an office in Killeen, Texas showed up at Kendricks' residence in Hewitt, TX and stated she needed to interview Kendricks' brother in private due to a report made that Kendricks and her mother was holding Kendricks' brother against his will, feeding him fruit that he was not allowed to eat, did not have proper equipment to take care of him, and had him sleeping on a mattress on the floor.

147. The state employee instructed Kendricks to go to her bedroom and remain until the state employee stated she could come out. Kendricks complied. The state employee did not ask Kendricks any questions regarding medical or safety issues with her brother before interviewing him as he was standing in the kitchen when Kendricks was instructed to her bedroom. Once the state employee informed Kendricks she could come out of her bedroom, the state employee stated she found no evidence of the abuse reported.

148. The state employee told Kendricks that someone in high authority contacted the department and initiated the investigation, and the process was irregular and not in accordance with the Texas Department of Adult Protective Services rules, procedures, and regulations. Kendricks did not live in the jurisdiction governed by the office the state employee works for.

149. Kendricks requested a copy of the file from the investigation of her by the Texas Department of Adult and Protective Services be emailed to her, and well after the time allowed for

the processing of her request, on 07/18/2022, Kendricks received an email from Elena Soto, DFPS Records Management Group.

150. The email Kendricks received from Soto states, "... I apologize for the delay in getting records to you ... Please reply to the email and verify whether your records requests are still needed. If you do still require the records, please confirm your mailing address, email address, and phone number. If I do not receive a response within five business days, your request will be closed."

151. Kendricks' address at the time she received Soto's email was different from her address when she initially requested records from the Texas Department of Adult and Protective Services. After Kendricks gave Soto her updated information, Hawkins sent Kendricks an email with a letter attached that had her new address and Kendricks had not given Hawkins or the courts her new address. The letter Hawkins sent to Kendricks served no legal purpose.

152. Kendricks reached out to Soto multiple times in email asking for the records Soto stated she would send to her, and Maribel Charnichart ("Charnichart"), Program Supervisor for Texas Department of Family Protective Services, Records Management Group, sent Kendricks an email on 08/11/2023.

153. Charnichart's email to Kendricks states, "...our staff released records to you 8/9/2022, via GovQA platform ... Unfortunately the role that you contributed, is a Collateral Contact, therefore we based the release of records upon your role." Kendricks did not receive the records that she requested to be sent to her email address, by any means, and her role in this matter is not "Collateral Contact."

154. Kendricks was illegally confined to her bedroom based on a false report investigated by a state employee, who acted without authority that was fraudulently asserted. Afterward, Soto and

Charnicart committed fraud, aided and abetted fraud by a state employee, and is covering up an illegal act. These acts by state employees have caused Kendricks to suffer harm.

155. Kendricks alleges that she is legally entitled to a copy of the file regarding the investigation of her by the Texas Department of Adult Protective Services, and Soto and Charnichart are violating her legal right to a copy of her file to cover up illegal, criminal, and/or harmful acts committed against her.

**Facts Related to Kendricks' Claims Against Texas Leadership**

156. Kendricks reached out to the Texas Governor, Gregg Abbott, multiple times since 2020 for assistance with fraud committed by state employees and he has not responded. Kendricks has reached out to Abbott, via the Governor's website, phone calls to his office, and a letter she mailed to him in 2022.

157. Kendricks has emailed state attorneys and commissioners for state agencies, some of whom have engaged in email to her, and asked them to make Abbott aware of her need for assistance. These individuals have made false claims to her in emails and have not assisted her with state employees denying her records that she is legally entitled to and committed fraud against her.

158. Kendricks reached out to the office of the Texas Attorney General, Ken Paxton, multiple times, since 2020, for assistance in getting records from state agencies that she is legally entitled to, and his staff denied her assistance by relying on a false claim and then ignored her efforts for assistance.

159. Kendricks requested her case file from the Texas Workforce Commission ("TWC") and she received it. When Kendricks filed for unemployment benefits, Broadway objected. Kendricks responded to Broadway's claim and the TWC granted Kendricks' benefits. The document in

Kendricks' TWC case file is missing the response Broadway gave to the TWC to prevent Kendricks from receiving unemployment benefits.

160. Kendricks requested her case file from the TWCCRD and has not received it despite making her request two years ago, making it under Texas law and an Open Records request, and making her request to the following TWC employees:

161. Kendricks received an email from the TWC Commissioner Aaron Demerson ("Demerson") and it states, "Ms. Kendricks: ... I will also visit with the team to ensure your request is being handled" and "I have been provided with an email sent to you from the Open Records team which I am informed addresses your request ... I'll loop out now."

162. "Before you 'loop out' please forward me 'the email you have been provided from the Open Records team' that addresses my request. Do so would promptly resolve this matter" and "Please sir, do not withhold' public records I am legally entitled to under the Public Information Act that you have in your possession as stated by you in the email I am responding to" are Kendricks' responses to Demerson.

163. Demerson did not provide Kendricks with the records she legally and properly requested nor did any of his staff. Kendricks sent approximately 70 emails to Demerson and his staff from 2020 until 2022 and as of the date of this filing has not received the records she requested.

164. Kendricks sent messages to Governor Abbott in emails to Demerson and Counsel for TWC, Les Trobman ("Trobman"), that she asked them to forward to the Texas Governor. Kendricks demanded her records in emails to Demerson and Trobman under Texas Labor Codes and they did not release her records.

165. Kendricks has emails to and from TWC Counsel Les Trobman and Nick Lealos for over a two-year period with her trying to get a copy of her case file from the TWCCRD. Kendricks

informed these two individuals that they were aiding and abetting fraud and that she was going to file a lawsuit and they still refused to release the records to Kendricks.

166. Kendricks alleges she is legally entitled to a copy of her TWCCRD file, and Demerson is violating her legal right to a copy of her file to cover up illegal, criminal, and/or harmful acts committed against her.

**Facts related to Kendricks' Claims Against Texas Social Security Administration Employees' and SSA Contracted Professionals**

167. On September 1, 2022, Kendricks filed an application for Social Security Disability Insurance and Supplemental Security Insurance, online via the SSA website, and she received an initial determination of denial for her claims in July of 2023.

168. In August of 2023, on several occasions, with different SSA employees to include supervisors, Kendricks requested a complete and accurate copy of her file from her local SSA office at 600 Sgt. Ed Holcomb Blvd N. Conroe, TX 77304, and she did not receive a copy of all records in her file that she is entitled to, but she did receive some documents from her SSA file.

169. The Disability Determination Explanation Kendricks received from the SSA was incomplete, indicated all evidence on record was not reviewed, included determinations not supported by any evidence from Kendricks or her treating sources, included determinations contradicted by the evidence in record, and stated determinations without revealing the evidence relied on.

170. The DDE in Kendricks file mentions the results from an imaging Kendricks received dated April 3, 2023 and states, "Bowel: Fluid filled distended small bowel loops in the right lower quadrant ...There may be a transition point in the mid abdomen. The more proximal small loops are decompressed ... The remaining of the proximal colon is also fluid-filled with air-fluid level seen ...."

171. In August of 2023, Kendricks informed a SSA supervisor, Sheila Futch, that if she did not get a copy of her file, she would go up the chain to the SSA Commissioner, and Futch told Kendricks she could go to the President of the United States if she wanted and did not give Kendricks a copy of her SSA file.

172. In August of 2023, Kendricks reviewed documents from her file with Futch, and after Kendricks identified a document that was fraudulent, Futch told her to give her the documents back, write down her request, and ended the conversation.

173. In August of 2023, Kendricks was informed by Futch "this is a N20 denial." After talking to Futch, Kendricks was told by SSA employees that she was "medically denied." The DDE in Kendricks' file is blank under the section "Medical Evaluation."

174. In September of 2023, Kendricks submitted a written request, under 42 U.S.C. 421 Sec 221, and a Reconsideration Request to the SSA for an initial determination of her claims to be made in accordance with SSA laws, rules, and regulations.

175. Kendricks reported to the SSA that information in her file is fraudulent and some of this fraudulent information was relied on for the denial of her claims and she had not been informed by the SSA of any action that has or will be taken regarding this matter.

176. In September of 2023, Kendricks was informed by a SSA supervisor that her only recourse to the denial of her claims was a Reconsideration Request, and not a Reopen Request based on Fraud and other Reasons. Consequently, Kendricks emailed the acting SSA Commissioner for help with the problems she is facing with the SSA employees in Texas and emailed Counsel for SSA.

177. Kendricks' initial determination of her SSA claims, as shown by the DDE, were made by William Bell, Disability Determination Specialist; Laurence Ligon, MD; and Karla Dulcour, PhD.

Bell, Ligon, and Dulcour made fraudulent statements, violated SSA laws, rules, and regulations, and acted in cohort to render an initial determination of Kendricks SSDI/SSI claims.

**RELIEF REQUESTED**

Kendricks requests the following relief: 1) An injunction so that she can received all records and information from Texas state agencies that she is legally entitled to. 2) An initial determination from the SSA regarding her SSDI and SSI claims that are in accordance with SSA laws, rules, and regulations. 3) An injunction for MCH, Oakley, Brown, and Musick to produce documents subpoenaed. 4) Declarative relief for void judgements and orders rendered against Kendricks in the District Court and the Appellate Court, and for such orders to be vacated. 5) Resolve issues of immunity, and the legal duty owed to Kendricks by officers of the Court. 6) A judgement against all defendants, for all claims, that is legal, fair, and just. 7) An award of over $30 million and all other relief the law entitles Kendricks to receive.

**PRAYER**

WHEREFORE, ALL PREMISES CONSIDERED, Plaintiff, Sheila Denise Kendricks, respectfully prays that the Honorable Court moves according to her request for a change in venue for all reasons stated above in this Complaint, and Kendricks requests to be given the opportunity to remedy any default in this Complaint.

Dated: October 10, 2023

Respectfully submitted,

By: Sheila Denise Kendricks

Plaintiff pro se
Sheila Denise Kendricks
25120 Panther Bend Court Apt. 330
Spring, TX 77380
(254) 447-3083
Sdkendricks2015@gmail.com